Filed 10/9/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JESSICA FERRA et al., | B283218 |
| Plaintiffs and Appellants, | Los Angeles County |
| v. | Super. Ct. No. BC586176 |
| LOEWS HOLLYWOOD HOTEL, LLC, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Kenneth R. Freeman, Judge. Affirmed.

Moss Bollinger, Ari E. Moss, Dennis F. Moss; Law Offices of Sahag Majarian II and Sahag Majarian II for Plaintiffs and Appellants.

Altshuler Berzon, Michael Rubin, Eileen B. Goldsmith; Haffner Law, Joshua H. Haffner, Graham G. Lambert; Stevens L.C. and Paul D. Stevens for California Employment Lawyers Association and Jacqueline F. Ibarra as Amici Curiae on behalf of Plaintiffs and Appellants.

Ballard Rosenberg Golper & Savitt, Richard S. Rosenberg, John J. Manier and David Fishman for Defendant and Respondent.

Blank Rome, Laura Reathaford, Brock Seraphin; Lathrop Gage and Laura Reathaford for Association of Southern California Defense Counsel as Amicus Curiae on behalf of Defendant and Respondent.

———————

Does "regular rate of compensation" for calculating meal or rest break premium payments mean the same thing as "regular rate of pay" for calculating overtime premium payments, and does facially neutral "rounding" of employee work time systematically undercompensate Jessica Ferra and a class of employees of Loews Hollywood Hotel, LLC (Loews)?  We agree with the trial court that the phrases have different meanings, and Loews's facially neutral rounding policy does not systematically undercompensate Loews employees.

## BACKGROUND

On October 7, 2015, Ferra filed a first amended complaint against Loews on behalf of herself and three alleged classes of hourly Loews employees extending as far back as June 26, 2011. Among other causes of action, Ferra alleged Loews improperly calculated her premium payment when Loews failed to provide her with statutorily required meal and/or rest breaks, in violation of Labor Code section 226.7,[1] and Loews underpaid Ferra by unlawfully "shaving or rounding time from the hours worked by Ferra."

The parties stipulated that Ferra worked as a bartender for Loews from June 16, 2012 to May 12, 2014, and Loews paid

———————

[1]    Unless otherwise indicated, all subsequent statutory citations are to the Labor Code.

2

(and continued to pay) meal and rest period premiums to hourly employees at their base rate of compensation (their hourly wage), without including an additional amount based on incentive compensation such as nondiscretionary bonuses.  The trial court ordered that, on those stipulated facts, it would summarily adjudicate under Code of Civil Procedure section 437c, subdivision (t) "[w]hether meal and rest period premium payments paid to employees pursuant to Labor Code § 226.7 must be paid at employees' 'regular rate of compensation,' i.e. their regular hourly wage, or at their 'regular rate of pay,' " and if it concluded the premium must be at the "regular rate of pay," whether section 226.7 was void for vagueness under the due process clause of the federal Constitution.

After briefing and a hearing, on February 6, 2017, the trial court issued an order granting the motion for summary adjudication, concluding:  "[T]he terms 'regular rate of compensation' and 'regular rate of pay' are not interchangeable. . . .  [R]est and meal period premiums under § 226.7 need only be paid at the base hourly rate.  As is consistent with the legislative history of §§ 226.7 and 510, it is apparent that the terms in both statutes are different, and have different purposes. [¶] . . . [¶] [M]eal and rest period premium payments paid to employees pursuant to Labor Code § 226.7 must be paid at employees' 'regular rate of compensation,' i.e., their regular hourly wage, and not at their 'regular rate of pay.' "  Loews's due process claim therefore was moot.

Loews also filed a motion for summary judgment on Ferra's remaining causes of action, arguing that Loews's "rounding" policy and practice did not result in underpayment of hourly employees, and any alleged underpayments were de minimis.

3

After briefing and a hearing, on April 24, 2017, the trial court issued an order granting summary judgment, concluding that on the undisputed facts, "Loews's [rounding] policy *is* neutral on its face and as applied" and did not "fail[ ] to compensate the employees for hours worked." The trial court declined to address as unnecessary Loews's alternative argument that any underpayments were de minimis.

The court granted in full Loews's motion for summary judgment. Judgment was entered May 11, 2017, Loews served notice of entry of judgment on May 19, 2017, and Ferra filed this timely appeal from the summary adjudication and summary judgment.

## DISCUSSION

If after an independent review of the record and the applicable law, we agree with the trial court that undisputed facts show there is no triable issue of material fact and Loews, as the moving party, was entitled to judgment as a matter of law, we must affirm the trial court's grant of summary adjudication and summary judgment. (Code Civ. Proc., § 437c, subds. (c), (t); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860.)

1. ***"Regular rate of compensation" means the employee's base hourly wage***

Section 226.7, subdivision (c) states: "If an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law. . . , the employer shall pay the employee one additional hour of pay at the employee's *regular rate of compensation* for each workday that the meal or rest or recovery period is not provided." (Italics added.) The Industrial Welfare Commission (IWC) Wage Order that applies to Loews and its employees also states that if an employer fails to provide

4

an employee a meal or rest period, "the employer shall pay the employee one (1) hour of pay at the employee's *regular rate of compensation* for each workday that the [meal or rest] period is not provided."  (IWC Wage Order No. 5-2001, subds. 11(B), 12(B) (Cal. Code Regs., tit. 8, § 11050, subds. 11(B), 12(B)), italics added.)  This additional hour is a "premium wage."  (*Esparza v. Safeway, Inc.* (2019) 36 Cal.App.5th 42, 52.)  The wage orders entitle employees "to an unpaid 30-minute, duty-free meal period after working for five hours and a paid 10-minute rest period per four hours of work.  (Cal. Code Regs., tit. 8, § 11070, subds. 11, 12.)  If denied two paid rest periods in an eight-hour workday, an employee essentially performs 20 minutes of 'free' work, i.e., the employee receives the same amount of compensation for working through the rest periods that the employee would have received had he or she been permitted to take the rest periods.  An employee forced to forgo his or her meal period similarly loses a benefit to which the law entitles him or her.  While the employee is paid for the 30 minutes of work, the employee has been deprived of the right to be free of the employer's control during the meal period.  [Citations.]  Section 226.7 provides the only compensation for these injuries."  (*Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1104) (*Murphy*).)

Section 510, the statute governing overtime, states in subdivision (a):  "Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the *regular rate of pay* for an employee," and "[a]ny work in excess of 12 hours in one day . . . [and] any work in excess of eight hours on any seventh day of

5

a workweek shall be compensated at the rate of no less than twice *the regular rate of pay* of an employee." (Italics added.) The overtime provisions in Wage Order No. 5-2001, subdivision 3(A) mirror the statutory language, stating that overtime work must be compensated at either one and one-half times or double "the employee's *regular rate of pay* for all hours worked." (Italics added.) "[T]he extra amount a worker must be paid, on top of normal pay, because certain work qualifies as overtime" is also called a premium. (*Alvarado v. Dart Container Corp. of California* (2018) 4 Cal.5th 542, 550.) In the overtime context, "[s]ignificantly, an employee's 'regular rate of pay' for purposes of Labor Code section 510 and the IWC wage orders is not the same as the employee's straight time rate (i.e., his or her normal hourly wage rate). Regular rate of pay, which can change from pay period to pay period, includes adjustments to the straight time rate, reflecting, among other things, shift differentials and the per-hour value of any nonhourly compensation the employee has earned." (*Id.* at p. 554.)

California case law does not define the meaning of "regular rate of compensation" in section 226.7, subdivision (c) and Wage Order No. 5-2001, subdivisions 11(B) and 12(B), which address rest and meal periods. The trial court agreed with Loews that "regular rate of compensation" means the additional hour premium is calculated as one hour of the employee's base hourly wage. On appeal, Ferra argues "regular rate of compensation" means the same as "regular rate of pay," so the premium must be calculated as an additional hour at the employee's base hourly wage, plus an additional amount based on her nondiscretionary quarterly bonus. We agree with the trial court and with Loews, however, that the statutory terms "regular rate of pay" and

6

"regular rate of compensation" are not synonymous, and the premium for missed meal and rest periods is the employee's base hourly wage.

### a. *The statutes' plain language differentiates "regular rate of compensation" from "regular rate of pay"*

The basic principle of statutory construction is "that we must look first to the words of the statute, 'because they generally provide the most reliable indicator of legislative intent.'" (*Murphy*, *supra*, 40 Cal.4th at p. 1103.)  We must "give[ ] significance to every word, phrase, sentence and part of an act." (*Flowmaster, Inc. v. Superior Court* (1993) 16 Cal.App.4th 1019, 1028.)  " 'Wage orders are quasi-legislative regulations and are construed in accordance with the ordinary principles of statutory interpretation.'" (*Vaquero v. Stoneledge Furniture, LLC* (2017) 9 Cal.App.5th 98, 107.)  We should avoid a construction of the wage order or statute that renders any part meaningless, inoperative, or superfluous. (*Ibid.*; *Shoemaker v. Myers* (1990) 52 Cal.3d 1, 22.)  "[S]tatutes governing conditions of employment are to be construed broadly in favor of protecting employees.  [Citations.]  Only when the statute's language is ambiguous or susceptible of more than one reasonable interpretation, may the court turn to extrinsic aids to assist in interpretation." (*Murphy*, at p. 1103.)[2]

---

[2]  *Murphy* concluded that the remedy provided in section 226.7 was a premium wage, not a penalty. (*Murphy*, *supra*, 40 Cal.4th at p. 1102.)

"Where different words or phrases are used in the same connection in different parts of a statute, it is presumed the Legislature intended a different meaning." (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1117.)

Ferra argues that the two phrases have the same meaning because both include the words "regular rate." Ferra thus urges us to construe only the phrase "regular rate," as used in the Labor Code and the federal Fair Labor Standards Act (FLSA), 29 United States Code section 201 et seq., and to disregard the additional language because "pay" and "compensation" are interchangeable.[3] But that would render meaningless the Legislature's choice to use "of compensation" in one statute and "of pay" in the other. If the Legislature had intended meal and rest break premiums to be calculated the same way as overtime premiums, it would not have used "regular rate of compensation" when setting premiums for missed meal and rest breaks, and "regular rate of pay" when setting premiums for overtime work. We assume the Legislature intended different meanings when it did not simply use "regular rate," but added different qualifiers

---

[3]    For example, Ferra cites *Walling v. Hardwood Co.* (1945) 325 U.S. 419, 424, for its use of "regular rate of compensation," but, there, the Court construed federal overtime provisions, and was not quoting statutory language. (See *Walling v. Harnischfeger Corp.* (1945) 325 U.S. 427, 430 [same]; *Local 246 Util. Workers Un. v. Southern Cal. Edison* (9th Cir. 1996) 83 F.3d 292, 295 [same].) Ferra also cites 29 United States Code section 207(e), the federal overtime statute, for its definition of "regular rate," and associated federal regulations. Again, these federal authorities do not answer the question of what "regular rate *of compensation*" means in section 226.7.

in the statutes and wage orders establishing premiums for overtime and for missed meal and rest periods.

Ferra also points out that sections 226.7 and 510 were both enacted in 2000, and both used "regular rate"; but the legislative decision to add "of compensation" to the first statute, and "of pay" to the second, works against Ferra's argument that the words do not matter, because surely the Legislature meant something different when it used different language in two statutes enacted at the same time.[4] "[I]f the Legislature carefully employs a term in one statute and deletes it from another, it must be presumed to have acted deliberately." (*Ferguson v. Workers' Comp. Appeals Bd.* (1995) 33 Cal.App.4th 1613, 1621; see *Murphy*, *supra*, 40 Cal.4th at p. 1108 ["That the Legislature chose to eliminate penalty language in section 226.7 while retaining the use of the word in other provisions of [Assem.] Bill No. 2509 is

---

[4] " 'Pay' is defined as 'money [given] in return for goods or services rendered.' (American Heritage Dict. (4th ed. 2000) p. 1291.)" (*Murphy*, *supra*, 40 Cal.4th at p 1104.) "Compensation" is defined as "[s]omething, such as money, given or received as payment or reparation, as for a service or loss." (American Heritage Dict., *supra*, at p. 376.) When an employee misses a meal period or a rest period, he "loses a benefit to which the law entitles him or her. While the employee is paid for the 30 minutes of work, the employee has been deprived of the right to be free of the employer's control during the meal period. [Citations.] Section 226.7 provides the only compensation for these injuries." (*Murphy*, at p. 1104.) The "central purpose" of overtime pay is to pay employees wages for time spent working. (*Id.* at p. 1109.) A section 226.7 action, however, is "not an action brought for nonpayment of wages; it is an action brought for nonprovision of meal or rest breaks." (*Kirby v. Immoos Fire Protection, Inc.* (2012) 53 Cal.4th 1244, 1257.)

further evidence that the Legislature did not intend section 226.7 to constitute a penalty."])

> ### b. *Legislative history does not compel the conclusion that "regular rate of compensation" and "regular rate of pay" are synonymous and interchangeable*

Although we do not believe the statutes' use of different definitions for the different premiums is ambiguous, we note that Ferra's resort to the legislative history does not require us to conclude that "regular rate of compensation" is the same as "regular rate of pay." Ferra acknowledges the legislative history does not define the two phrases, but points to the regulatory history of the wage order revisions in which the IWC adopted the hour premium for rest and meal period violations, quoting the use in *Murphy*, *supra*, 40 Cal.4th 1094, of a commissioner's statement at a "June 30, 2000 hearing at which the IWC adopted the 'hour of pay' remedy." (*Id.* at pp. 1109-1110.) The commissioner stated: " 'This [meal and rest pay provision applies to] an employer who says, "You do not get lunch today, you do not get your rest break, you must work now." That is—that is the intent. . . . And, of course, the courts have long construed overtime as a penalty, in effect, on employers for working people more than full—you know, that is how it's been construed, as more than the—the daily normal workday. It is viewed as a penalty and a disincentive in order to encourage employers not to. *So, it is in the same authority that we provide overtime pay that we provide this extra hour of pay.*' " (*Id.* at p. 1110.)

While Ferra argues that this means the hour premium for meal and rest break violations should be calculated like overtime pay, *Murphy* used the commissioner's statement to differentiate

10

the two payments, pointing out that although the IWC used the word " 'penalty' " at times to refer to meal and rest period payments, "the Legislature's occasional description of the meal and rest period remedy as a 'penalty' in the legislative history should be informed by the way in which the IWC was using the word; namely, that like overtime pay, the meal and rest period remedy has a corollary disincentive aspect in addition to its central *compensatory* purpose. [¶] We conclude that the administrative and legislative history of the statute indicates that, whatever incidental behavior-shaping purpose section 226.7 serves, the Legislature intended section 226.7 first and foremost to *compensate* employees for their injuries." (*Murphy*, *supra*, 40 Cal.4th at pp. 1110-1111, fn. omitted, italics added.)  Section 226.7's " 'additional hour of pay' . . . is a premium wage intended to compensate employees, not a penalty." (*Murphy*, at p. 1114.)[5] *Murphy* recognized that the occasional use of "penalty" in the legislative history did not require the court to conclude that section 226.7 was intended to be a penalty, noting that "the Legislature chose to eliminate penalty language in section 226.7 while retaining the use of the word in other provisions . . . [which] is further evidence that the Legislature did not intend section 226.7 to constitute a penalty." (*Murphy*, at p. 1108.)  Here, the occasional equating of the purpose of providing overtime premiums with the premiums for missed meal and rest breaks does not require us to conclude that the premiums must be

---

[5]     The court also noted that judicial references to overtime pay as a "penalty" did not transform overtime pay into a penalty for the purpose of the statute of limitations.  (*Murphy*, *supra*, 40 Cal.4th at p. 1109.)

calculated identically, especially in light of the Legislature's choice to use "regular rate of compensation" in section 226.7 and "regular rate of pay" in section 550.[6]

It is the Legislature's choice to use different phrases that must be construed to mean that the statutes mean different things. Ferra and amicus California Employment Lawyers Association point out a few occasions on which the Division of Labor Standards Enforcement used the phrases interchangeably, but the Legislature and the statutes did not, and it is the Legislature's choice of different descriptions of the premiums that governs our analysis. While in common parlance "pay" and "compensation" are sometimes used interchangeably, the Legislature did not do so in choosing the language of the statutes.

c. *Persuasive federal opinions favor construing the phrases differently*

No published California case distinguishes "regular rate of compensation" as it applies to missed meal and rest periods from "regular rate of pay" for overtime purposes. We therefore look to "analytically sound" reasoning in federal opinions, and "[a]lthough not binding precedent on our court, we may consider relevant, unpublished federal district court opinions as persuasive." (*Futrell v. Payday California, Inc.* (2010) 190 Cal.App.4th 1419, 1432, fn. 6.)

_____

[6] Assembly Bill No. 60 (1999-2000 Reg. Sess.), which amended the overtime statute, used the phrase "regular rate of pay" eight times, including in its amendment to section 510 (Stats. 1999, ch. 134), without ever using "regular rate of compensation"; Assembly Bill No. 2509 (1999-2000 Reg. Sess.) section 7, which added section 226.7, does not use "regular rate of pay."

12

A number of federal district courts have concluded that the use of "regular rate of compensation" in section 226.7 means that the premium for missed meal periods must be paid at the regular rate of compensation (the base hourly rate), rather than at the regular rate of pay applicable to overtime premiums. In *Bradescu v. Hillstone Restaurant Group, Inc.* (C.D.Cal., Sept. 18, 2014, SACV No. 13-1289-GW) 2014 U.S. Dist. Lexis 150978 (*Bradescu*), the court agreed with the defendant that "payment of any meal period premium at Plaintiff's regular rate of *compensation*—as opposed to her regular rate of *pay*— was appropriate" under section 226.7, subdivision (c), and Wage Order No. 5-2001, subdivision 11(B). (*Bradescu*, at \*14.) "[T]here is no authority supporting the view that 'regular rate of compensation,' for purposes of meal period compensation, is to be interpreted the same way as 'regular rate of pay' is for purposes of overtime compensation. The Court consequently agrees with [defendant] that the legislature's choice of different language is meaningful, in the absence of authority to the contrary, and therefore rules in [defendant's] favor on this point." (*Id.* at \*22.) In *Wert v. United States Bancorp* (S.D.Cal., Dec. 18, 2014, No. 13-cv-3130-BAS) 2014 U.S. Dist. Lexis 175735 (*Wert*), the court agreed with *Bradescu*, that the use of different language in the meal period and overtime statutes was meaningful: "The plain language of §§ 226.7 and 510 does not suggest that the phrase[ ] 'regular rate of compensation' is synonymous to and may be used interchangeably with 'regular rate of pay.' " (*Wert*, at \*10.) In denying the plaintiff's motion for reconsideration, the court reiterated: "[T]he legislature's choice of different language is meaningful, and . . . the relief under § 226.7 is not necessarily or logically the same as the relief under

§ 510 insofar as the 'regular rate' language is involved." (*Wert v. U.S. Bancorp* (S.D.Cal., June 9, 2015, No. 13-cv-3130-BAS) 2015 U.S. Dist. Lexis 74523, at \*7; see *Van v. Language Line Services, Inc.* (N.D.Cal., June 6, 2016, No. 14-CV-03791-LHK) 2016 U.S. Dist. Lexis 73510, at \*54.)

Two years later, *Brum v. Marketsource, Inc.* (E.D.Cal., June 19, 2017, No. 2:17-cv-241-JAM-EFB) 2017 U.S. Dist. Lexis 94079 (*Brum*) agreed with *Wert* and *Bradescu* and rejected the reasoning in *Studley v. Alliance Healthcare Services, Inc.* (C.D.Cal., July 26, 2012, SACV No. 10-00067-CJC) 2012 U.S. Dist. Lexis 190964 (*Studley*, discussed below). *Brum* acknowledged the plaintiff's argument that California cases have used "regular rate of pay" and "regular rate of compensation" interchangeably, but pointed out that none of these cases addresses the difference between the two terms as they appear in the statutes. (*Brum*, at \*13-14.) More recently, in *Frausto v. Bank of America* (N.D.Cal., Aug. 2, 2018, No. 18-cv-01983-MEJ) 2018 U.S. Dist. Lexis 130220, the plaintiff alleged that her premiums for missed meal periods "were inadequate because they were only based on her straight time rate, not her regular rate of pay that includes all bonuses earned." (*Id.* at \*12.) The court cited *Bradescu*, *Brum*, and *Wert* to conclude "there is no legally tenable argument that section 226.7 payments should be paid at the 'regular rate' used for overtime purposes," as section 226.7 " 'uses the employee's rate of compensation.' " (*Frausto*, at \*14.)

As Ferra points out, *Studley* reached a different result, reasoning that premiums for missed meal periods were like overtime pay, and like the overtime statute, section 226.7 used the term "regular rate." *Studley* concluded that "regular rate

14

of compensation" in section 226.7 and "regular rate of pay" in section 510 should be interpreted the same, because "the operative word or phrase in each section is not 'compensation' or 'pay' but rather 'regular rate,' " and the meanings of "compensation" and "pay" were essentially identical. (*Studley*, *supra*, 2012 U.S. Dist. Lexis 190964, at *14 & fn. 4.)

Two later cases agree. In *Ibarra v. Wells Fargo Bank, N.A.* (C.D.Cal., May 8, 2018, CV No. 17-4344-PA) 2018 U.S. Dist. Lexis 78513 (*Ibarra*), the court declined to compare the language of section 226.7 to section 510. The employees were mortgage consultants whose "normal compensation was not comprised solely or even primarily of pay calculated at an hourly rate," "the hourly pay was stated to be only an advance on commissions," and the employees "could receive compensation based on commissions such that the hourly rate was essentially irrelevant." (*Ibarra,* at *7.) Under those circumstances, "[t]he Court is not persuaded that the 'regular rate of compensation' for all class members *should* be an hourly rate that did not actually determine the compensation received by most of the class members."[7] (*Id.* at *7-8, italics added.) The court acknowledged the cases finding significant the language "regular rate of compensation" in section 226.7 and "regular rate of pay"

---

[7] Using the hourly rate to calculate the premiums would result in class-wide damages of $24,472,114.36, and calculating the premiums by including all forms of compensation, including commissions and other nondiscretionary pay, more than quadrupled the damage award to $97,284,817.91. (*Ibarra, supra*, 2018 U.S. Dist. Lexis 78513, at *5 & fn. 3.) Ferra does not argue that Loews's compensation system would result in similarly disparate damages.

15

in section 510, but agreed with *Studley*, that the operative language in both statutes was "regular rate." (*Ibarra,* at *9-10.) Legislative history did not clearly support either side, and interpreting section 226.7 to require premiums at more than the base hourly rate comported with construing the labor laws in favor of worker protection. (*Ibarra,* at *12-14.) One recent district court opinion, *Magadia v. Wal-Mart Associates, Inc.* (2019) 384 F.Supp.3d 1058 (*Magadia*) required Wal-Mart to factor in a nondiscretionary quarterly bonus in calculating the "regular rate of compensation" under section 226.7, noting it had adopted *Ibarra*'s conclusion that the regular rate of compensation included the base rate of compensation and other forms of qualifying compensation. (*Magadia,* at pp. 1077-1078.)[8]

Most recently, and just after we heard oral argument in this case, the court in *Valdez v. Fairway Independent Mortgage Corporation* (S.D.Cal., July 26, 2019, No. 18-cv-2748-CAB-KSC) ___ F.Supp.3d ___ [2019 U.S. Dist. Lexis 126013] (*Valdez*) stated: "The Court does not agree with the reasoning behind cases Defendant relies on that find the two terms interchangeable, as those cases either narrowly construed such a finding to the specific circumstances of that case or rejected the difference in language without explanation. [Citations.]" (*Id.* at *14, citing *Ibarra, supra,* 2018 U.S. Dist. Lexis 78513, at *11 and *Magadia, supra,* 384 F.Supp.3d at pp. 1077-1078.) "The Court is more persuaded by the reasoning behind the cases acknowledging the distinction between the two terms and Plaintiff's assertion that the overwhelming weight of authority supports the position that

---

[8] Both *Ibarra* and *Magadia* have been appealed to the Ninth Circuit Court of Appeals.

'regular rate of compensation' is not synonymous with 'regular rate of pay.' [Citations.]" (*Valdez*, at \*14-15, citing *Wert, supra,* U.S. Dist. Lexis 175735, at \*10-11; *Frausto, supra*, 2018 U.S. Dist. Lexis 130220, at \*14; *Murphy, supra,* 40 Cal.4th at p. 1113; and *Brum, supra*, 2017 U.S. Dist. Lexis 94079, at \*13-14.) "Having considered both positions, the Court agrees with Plaintiff's assertion that 'regular rate of compensation' is not equivalent to 'regular rate of pay' and likewise finds the legislature's distinction of the two terms significant." (*Valdez,* at \*15.)

We conclude that equating "regular rate of pay" and "regular rate of compensation" would elide the difference between requiring an employer to pay overtime for the time an employee spends working more than 40 hours a week, which pays the employee for extra work, and requiring an employer to pay a premium for missed meal and rest hour periods, which compensates an employee for the loss of a benefit. We agree with the dissent that the statutes are to be construed in favor of protecting employees. Requiring employers to compensate employees with a full extra hour at their base hourly rate for working through a 30-minute meal period, or for working through a 10-minute rest break, provides a premium that favors the protection of employees.

**2.     *Loews's rounding policy and practice is lawful***

Ferra and other Loews hourly employees clocked in and out of work using an electronic timekeeping system which automatically rounded time entries either up or down to the nearest quarter-hour. In addition, the Loews Attendance Policy stated: "A seven (7) minute grace period, prior to the beginning of a shift, and a six (6) minute grace period, after the scheduled

17

start time, is incorporated into the timekeeping system and provides the team member with a degree of flexibility when clocking in. A team member who clocks in after the (6) six minute grace period is considered tardy for work."

"In California, the rule is that an employer is entitled to use a rounding policy 'if the rounding policy is fair and neutral on its face and "it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked." ' " (*Donohue v. AMN Services, LLC* (2018) 29 Cal.App.5th 1068, 1083, quoting *See's Candy Shops, Inc. v. Superior Court* (2012) 210 Cal.App.4th 889, 907 (*See's*).) In this case, Loews's "policy is neutral on its face. It 'rounds all employee time punches to the nearest quarter-hour without an eye towards whether the employer or the employee is benefitting from the rounding.' " (*AHMC Healthcare, Inc. v. Superior Court* (2018) 24 Cal.App.5th 1014, 1027 (*AHMC*), quoting *Corbin v. Time Warner Entertainment-Advance/Newhouse Partnership* (9th Cir. 2016) 821 F.3d 1069, 1078-1079 (*Corbin*).) "Employers use rounding policies to calculate wages efficiently; sometimes, in any given period, employees come out ahead and sometimes they come out behind, but the policy is meant to average out *in the long-term*. If an employer's rounding practice does not permit both upward and downward rounding, then the system is not neutral and 'will . . . result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked.' [Citation.] Such an arrangement '[p]resumably' does not 'average[ ] out.' " (*Corbin*, *supra*, 821 F.3d at p. 1077.) And the grace period policy means that if the clock shows the employee

18

clocked in before the end of the six-minute grace period, the employee is not considered tardy.

Although Ferra challenges the accuracy of the data before the trial court, she also claims the data shows the rounding policy was not neutral as applied.[9] Ferra's time records showed she lost time by rounding in 55.1 percent of her shifts, gained time in 22.8 percent, and the remaining shifts were not affected by rounding, during the relevant time period (June 17, 2012 through April 29, 2014). For a sample group of Loews employees, in 54.6 percent of shifts paid time was reduced, paid time was added in 26.4 percent of shifts, and the remaining shifts were not affected by rounding, during the relevant time period (June 2012 through

---

[9] Loews's expert analyzed data provided to her by Loews from punch records for Ferra, and for a sample of Loews employees (sorted by last names). Ferra calls the employee group "seemingly randomly selected members of the [Loews] work force." Ferra claims the data "did not provide evidence of the number of employees hurt overall by rounding as opposed to the number benefitted overall by rounding, nor did it break down the differences between beginning of shift and end of shift rounding." Nevertheless, Ferra argues on appeal that the data "clearly establish that the work force is harmed by rounding" and "proved systematic under-compensation." Ferra also used the data in her first amended complaint to allege that during approximately 50 percent of her and the class's workweeks, she and the Loews employees were not paid for all time worked. Her opposition to the motion for summary judgment relied heavily on the data (which she included as undisputed facts), and in granting summary judgment the trial court stated, "Loews' evidence is undisputed with respect to how the rounding policy and grace period actually operated." We therefore rely on the expert's declaration and supporting exhibits.

December 2015).  The rounding data did not break down the time gained or lost by employee (except for Ferra, whose time was analyzed separately).

This is not sufficient to show that the rounding policy " 'systematically undercompensate[s] employees.' " (*See's*, *supra*, 210 Cal.App.4th at pp. 901-902.)  Although in *See's* the majority of employees were overcompensated, *See*'s does not "stand[ ] for the proposition that a rounding policy is unlawful where a bare majority of employees lose compensation." (*AHMC*, *supra*, 24 Cal.App.5th at p. 1024.)  *AHMC* described two unpublished federal district court opinions involving quarter-hour rounding systems which "concluded that the fact that a slight majority of employees lost time over a defined period was not sufficient to invalidate an otherwise neutral rounding practice." (*Ibid*.) The first case showed that 53 percent of employees lost time over a five-year period, and the second showed that 55.8 percent of employees (including the plaintiff) suffered minor losses over a three-year period. (*Id.* at pp. 1025-1026.)  Both courts concluded that summary judgment in favor of the employer was nevertheless appropriate. (*Ibid*.)  " '[R]ounding contemplates the possibility that in any given time period, some employees will have net overcompensation and some will have net undercompensation.  Given the expected fluctuations with respect to individual employees, shifting the time window even slightly could flip the figures.' " (*Id.* at p. 1025; *Utne v. Home Depot U.S.A., Inc.* (N.D.Cal., Dec. 4, 2017, No. 16-cv-01854-RS) 2017 U.S. Dist. Lexis 199184, at *11-12 (*Utne*).)  "Although the data analyzed here—from October 22, 2012 to September 1, 2015 —did not average out to 0, Defendant's expert calculations are sufficient to establish that the practice does not systematically

undercompensate employees over time." (*Boone v. PrimeFlight Aviation Services, Inc.* (E.D.N.Y., Feb. 20, 2018, No. 15-CV-6077-JMA-ARL) 2018 U.S. Dist. Lexis 28000, at \*28.)

We agree with the trial court that Loews's rounding policy does not systematically undercompensate its employees over time.[10] As *AHMC* states, a "fair and neutral" rounding policy does not require that employees be overcompensated, and a system can be fair or neutral even where a small majority loses compensation. (*AHMC*, *supra*, 24 Cal.App.5th at p. 1024.) Ferra did not demonstrate that Loews's rounding policy systematically undercompensated employees over time.

---

[10] Like the trial court, we therefore do not address the de minimis argument Loews made in its motion for summary judgment. (See *Troester v. Starbucks Corp.* (2018) 5 Cal.5th 829, 848) [California has not incorporated the de minimis rule in the FLSA and California de minimis law does not apply to rounding policy violations].)

21

**DISPOSITION**

The judgment is affirmed.  Costs are awarded to respondent Loews Hollywood Hotel, LLC.

**CERTIFIED FOR PUBLICATION**


EGERTON, J.

I concur:


LAVIN, J.

**EDMON, P.J., Concurring and Dissenting.**

I agree that Loews's policy of rounding time entries up or down to the nearest quarter hour is lawful.  However, I respectfully disagree with the majority's conclusion that "regular rate of compensation" as used in Labor Code[1] section 226.7 means an employee's base hourly rate.  Instead, I would conclude that "regular rate of compensation" has the same meaning as "regular rate of pay," and thus that it includes nondiscretionary bonuses "[that] are a normal and regular part of [an employee's] income."  (*Walling v. Harnischfeger Corp.* (1945) 325 U.S. 427, 432.

**1. *Interpretive principles***

"In statutory construction cases, our fundamental task is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute.  (*Day v. City of Fontana* (2001) 25 Cal.4th 268, 272.)  'We begin by examining the statutory language, giving the words their usual and ordinary meaning.'  (*Ibid.*; *People v. Lawrence* (2000) 24 Cal.4th 219, 230.)  If the terms of the statute are unambiguous, we presume the lawmakers meant what they said, and the plain meaning of the language governs.  (*Day v. City of Fontana, supra*, 25 Cal.4th at p. 272; *People v. Lawrence, supra*, 24 Cal.4th at pp. 230—231.)  If there is ambiguity, however, we may then look to extrinsic sources, including the ostensible objects to be achieved and the legislative history.  (*Day v. City of Fontana, supra*, 25 Cal.4th at p. 272.)  In such cases, we ' " 'select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and

_____

[1]     All subsequent undesignated statutory references are to the Labor Code.

avoid an interpretation that would lead to absurd consequences.' " ' (*Ibid*.)" (*Estate of Griswold* (2001) 25 Cal.4th 904, 910–911.)

Contrary to the majority (maj. opn. *ante*, at p. 10), I believe "regular rate of compensation" is ambiguous because it is susceptible of more than one interpretation. (See *Jones v. Lodge at Torrey Pines Partnership* (2008) 42 Cal.4th 1158, 1163 [statutory language is ambiguous if it " 'permits more than one reasonable interpretation' "].) The plain meaning of "compensation" is "payment, remuneration," and the plain meaning of "regular" is "constituted, conducted, scheduled." (Merriam-Webster's 11th Collegiate Dict. (2008) p. 253, col. 2, p. 1048, col. 1.) On its face, therefore, "regular rate of compensation" could mean *either* an hourly rate plus incentive/bonus pay *or* an hourly rate alone. I therefore would conclude that resort to extrinsic sources and principles of statutory construction is necessary to determine legislative intent.

As discussed below, I find three principles of statutory construction relevant to interpreting section 226.7. First, the state's labor laws are to be liberally construed in favor of worker protection. Second, courts must presume the Legislature was aware of judicial construction of existing law and intended the same construction to apply to related laws with identical or substantially similar language. And third, where statutes use synonymous words or phrases interchangeably, those words or phrases should be understood to have the same meaning. Each of these interpretive principles leads to the same conclusion: that "regular rate of compensation" and "regular rate of pay" are

2

synonymous, and thus that section 226.7 should be interpreted consistently with section 510.

## 2. *Liberal construction of labor laws in favor of worker protection*

Our Supreme Court has directed that to determine the Legislature's intent in enacting wage and hour legislation, our analysis must be guided by "[t]wo overarching interpretive principles." (*Alvarado v. Dart Container Corp. of California* (2018) 4 Cal.5th 542, 561 (*Alvarado*).)  First, the obligation to pay meal and rest break premiums reflects a state policy that meal and rest periods are essential to worker health and safety. (*Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1105.)  Second, "the state's labor laws are to be liberally construed in favor of worker protection." (*Alvarado*, *supra*, 4 Cal.5th at p. 562; see also *ZB, N.A. v. Superior Court of San Diego County* (2019) 8 Cal.5th 175, 189 ["Because statutes governing employment conditions tend to have remedial purposes, we 'liberally construe' them 'to favor the protection of employees.' "].)  Therefore, in deciding whether to factor a nondiscretionary bonus into an employee's meal and rest break premium, "we are obligated to prefer an interpretation that discourages employers from [depriving employees of meal and rest breaks], and that favors the protection of the employee's interests." (*Alvarado*, at p. 562.)

Interpreting "regular rate of compensation" to include nondiscretionary bonuses unquestionably encourages compliance with meal and rest break requirements because it raises the cost to employers of noncompliance.  Accordingly, the presumptions in favor of worker protection and enforcement of meal and rest

break requirements weigh strongly in favor of construing section 226.7 consistently with section 510.

**3.** ***Consistent construction of similar statutory language on the same or analogous subjects***

" 'Where . . . legislation has been judicially construed and a subsequent statute on the same or an analogous subject uses identical or substantially similar language, we may presume that the Legislature intended the same construction, unless a contrary intent clearly appears.' (*Estate of Griswold*[, *supra*,] 25 Cal.4th [at pp.] 915–916.)" (*Moran v. Murtaugh Miller Meyer & Nelson, LLP* (2007) 40 Cal.4th 780, 785.)   In other words, "[w]e presume the Legislature 'was aware of existing related laws' when it enacted [section 226.7], and that it 'intended to maintain a consistent body of rules.' (*People v. Superior Court (Zamudio)* (2000) 23 Cal.4th 183, 199.)  We also presume the Legislature was aware of judicial construction of those laws and that it intended the same construction to apply to related laws with identical or substantially similar language.  (*Moran v. Murtaugh Miller Meyer & Nelson, LLP* (2007) 40 Cal.4th 780, 785.)" (*In re R.G.* (2019) 35 Cal.App.5th 141, 146.)

When the Legislature adopted section 226.7 in 2000, it did so against the backdrop of longstanding federal law that defined overtime pay in terms of an employee's "*regular rate*," and existing state law that defined overtime pay in terms of an employee's "*regular rate of pay*."  Both phrases had been repeatedly construed to include nondiscretionary bonuses and incentives, in addition to base hourly pay.  The historical use of these terms is essential to understanding the Legislature's intent in adopting section 226.7, and thus I summarize that use in some detail here.

4

### a. Historical use of "regular rate" in federal and state overtime provisions
#### i. The Fair Labor Standards Act

As adopted in 1938, section 7(a) of the federal Fair Labor Standards Act (FLSA), 29 U.S.C. section 201 et seq., required employers to compensate employees for all hours in excess of 40 at one and one-half times the " '*regular rate* at which he is employed.' " (*149 Madison Ave. Corporation v. Asselta* (1947) 331 U.S. 199, 200, fn. 1, italics added.)

The FLSA initially did not define "regular rate," and litigation over the meaning of the phrase ensued almost immediately. In 1944, the Supreme Court held that " 'regular rate' . . . mean[s] the hourly rate *actually paid* for the normal, non-overtime workweek." (*Walling v. Helmerich & Payne, Inc.* 1944, 323 U.S. 37, 40, italics added; see also *Walling v. Youngerman-Reynolds Hardwood Co.* (1945) 325 U.S. 419, 424–425, italics added ["The regular rate by its very nature must reflect *all payments* which the parties have agreed shall be received regularly during the workweek, exclusive of overtime payments. It is not an arbitrary label chosen by the parties; it is an actual fact"].) The following year, the court held that "regular rate" necessarily included not only the base hourly rate, but also nondiscretionary bonuses.[2] It explained: "Those who receive

---

[2] The court provided the following example: "An incentive worker is assigned a basic rate of $1 an hour and works 50 hours a week on 15 'time studied' jobs that have each been given a 'price' of $5. He completes the 15 jobs in the 50 hours. He receives $50 basic pay plus $25 incentive pay (the difference between the base pay and 15 job prices). In addition, the worker receives $5 extra for the 10 overtime hours. This is computed on

5

incentive bonuses in addition to their guaranteed base pay clearly receive a greater *regular rate* than the minimum base rate. . . .  The conclusion that only the minimum hourly rate constitutes the regular rate opens an easy path for evading the plain design of § 7(a).  We cannot sanction such a patent disregard of statutory duties." (*Walling v. Harnischfeger Corp.*, *supra*, 325 U.S. at pp. 431–432, italics added.)[3]

By the 1950's, Congress had amended FLSA section 7(a) to include a definition of "regular rate" consistent with that articulated by the Supreme Court, as follows:  "As used in this section the 'regular rate' at which an employee is employed shall

_____

the basis of 50% of the $1 base rate, or 50 cents an hour premium.  Actually, however, this worker receives compensation during the week at the actual rate of $1.50 an hour ($75 divided by 50 hours) and the overtime premium should be computed on that basis, giving the worker a premium of 75 cents an hour or $7.50 for the 10 overtime hours." (*Walling v. Harnischfeger Corp.*, *supra*, 325 U.S. at p. 431, fn. 3.)

[3]      In so concluding, the court rejected the employer's contention that incentive bonuses were not part of the "regular rate" because they could not be calculated or paid contemporaneously.  The court explained:  "[Employer] also points to the fact that the incentive bonuses are often not determined or paid until weeks or even months after the semi-monthly pay-days, due to the nature of the 'priced' jobs.  But [FLSA] Section 7(a) does not require the impossible.  If the correct overtime compensation cannot be determined until some time after the regular pay period the employer is not thereby excused from making the proper computation and payment. [FLSA] Section 7(a) requires only that the employees receive a 50% premium as soon as convenient or practicable under the circumstances." (*Walling v. Harnischfeger Corp.*, *supra*, 325 U.S. at pp. 432–433.)

6

be deemed to include all remuneration for employment paid to, or on behalf of, the employee."  (See *Mitchell v. Adams* (5th Cir. 1956) 230 F.2d 527, 532, fn. 10.)

Although the FLSA has been amended many times, the statute in its current form continues to require overtime pay as a multiple of an employee's "regular rate," and to define "regular rate" as "*all remuneration* for employment paid to, or on behalf of, the employee," subject to exceptions not relevant here. (29 U.S.C., § 207, subds. (a)(1), (e), italics added.)  Federal courts interpreting this section have consistently held that "regular rate" includes, among other things, nondiscretionary bonuses and incentives.  (E.g., *Local 246 Utility Workers Union of America v. Southern California Edison Co.* (9th Cir. 1996) 83 F.3d 292 [supplemental payments to disabled workers were part of the employees' "regular rate"]; *Featsent v. City of Youngstown* (6th Cir. 1995) 70 F.3d 900, 904 [shift differentials and hazardous duty pay may not be excluded from the "regular rate"]; *Reich v. Interstate Brands Corp.* (7th Cir. 1995) 57 F.3d 574, 577 [bonus must be included in the "regular rate" unless it is entirely discretionary with the employer].)[4]

---

[4]     Interestingly, federal courts interpreting the FLSA section 7(a) have frequently described "regular rate" as an employee's "regular rate *of compensation*."  (E.g., *Walling v. Youngerman-Reynolds Hardwood Co.*, *supra*, 325 U.S. at p. 424 ["The keystone of § 7(a) is the *regular rate of compensation.*  On that depends the amount of overtime payments which are necessary to effectuate the statutory purposes," italics added]; *Walling v. Harnischfeger Corp.*, *supra*, 325 U.S. at p. 430 [in determining whether employer properly calculated overtime pay under FLSA, "[o]ur attention here is focused upon a determination of the *regular rate of compensation* at which the

### ii.    Pre-2000 Wage Orders

In 1913, the California Legislature established the Industrial Welfare Commission (IWC), to which it delegated authority for setting minimum wages, maximum hours, and working conditions.  (*Augustus v. ABM Security Services, Inc.* (2016) 2 Cal.5th 257, 263 (*Augustus*).)  The IWC began issuing industry- and occupation-specific wage orders in 1916.[5]

---

incentive workers are employed," italics added]; *United States Department of Labor v. Fire & Safety Investigation Consulting Services, LLC* (4th Cir. 2019) 915 F.3d 277, 280–281 ["To determine whether [employer's] payment scheme violated the FLSA, we must first decide what constitutes the *'regular rate' of compensation* actually paid to the Consultants, as that rate establishes the proper overtime compensation due," italics added]; *Local 246 Utility Workers Union of America v. Southern California Edison Co.* (9th Cir. 1996) 83 F.3d 292, 295 ["Employees working overtime must be compensated at not less than one-and-one-half times the *regular rate of compensation.* 29 U.S.C. § 207(a)(1)," italics added]; *Walling v. Garlock Packing Co.* (2d Cir. 1947) 159 F.2d 44, 46 ["It is urged upon us . . . that there is no relationship between the bonus or premium paid and the amount produced or the time worked by the employee, and therefore that the bonus is not part of the *regular rate of compensation.*  But this argument is not convincing," italics added].)

[5]    The IWC has promulgated 18 wage orders:  Twelve of them cover specific industries, four cover certain occupations, one is a general minimum wage order, and one applies to industries and occupations not covered by, and all employees not specifically exempted in, the wage orders in effect in 1997.  (*Huntington Memorial, supra,* 131 Cal.App.4th at p. 902.)  Although the Legislature defunded the IWC in 2004, its wage orders remain in effect.  (*Mendiola v. CPS Security Solutions, Inc.* (2015) 60 Cal.4th 833, 838, fn. 6.)  In California, wage orders "are

California's current wage orders are closely modeled after section 7(a)(1) of the FLSA. (*Alcala v. Western Ag Enterprises* (1986) 182 Cal.App.3d 546, 550.) From the early twentieth century, the IWC's wage orders required employers to pay employees premium wages for overtime work (*California Grape, etc. League v. Industrial Welfare Com.* (1969) 268 Cal.App.2d 692, 703), and by at least 1968, wage orders defined the overtime premium with reference to an employee's "*regular rate of pay*." (See *Rivera v. Division of Industrial Welfare* (1968) 265 Cal.App.2d 576, 598, fn. 35, italics added [employees could not be employed "more than eight (8) hours in any one day nor more than (5) days in any one week unless the employee receives one and one-half (1½) times her *regular rate of pay* for all work over forty (40) hours or the sixth (6th) day"].)

Although the California wage orders added a modifier to the federal definition—referring to an employee's "regular rate *of pay*," rather than his or her "regular rate"—California authorities consistently have concluded the two phrases are synonymous. Significantly, the Division of Labor Standards Enforcement (DLSE), the state agency that enforces wage and hour laws (*Ward v. Tilly's, Inc.* (2019) 31 Cal.App.5th 1167, 1176), has said that "the failure of the IWC to define the term 'regular rate' indicates the [IWC's] intent that in determining what payments are to be included in or excluded from the calculation of the regular rate of pay, California will adhere to the standards

---

constitutionally-authorized, quasi-legislative regulations that have the force of law." (*Dynamex Operations W. v. Superior Court* (2018) 4 Cal.5th 903, 914, fn. 3, citing Cal. Const., art. XIV, § 1; §§ 1173, 1178, 1178.5, 1182, 1185; *Industrial Welfare Com. v. Superior Court* (1980) 27 Cal.3d 690, 700—703.)

adopted by the U.S. Department of Labor to the extent that those standards are consistent with California law." (Dept. of Industrial Relations, DLSE, Chief Counsel H. Thomas Cadell, Jr., Opn. Letter No. 2001-01-29, Calculation of Regular Rate of Pay (Jan. 29, 2003) p. 2, fn. 1.) And, as specifically relevant in the present case, the DLSE has drawn on federal authorities to conclude that "regular rate of pay," like "regular rate," includes nondiscretionary bonuses and incentives. (Dept. of Industrial Relations, DLSE, Chief Counsel H. Thomas Cadell, Jr., Opn. Letter No. 1991-03-06, Calculation of Regular Rate of Pay (Mar. 6, 1991) p. 1; see also *Huntington Memorial Hospital v. Superior Court* (2005) 131 Cal.App.4th 893, 902—903 (*Huntington Memorial*) [citing advice letter].)[6]

---

[6]     In a March 1991 opinion letter, the DLSE considered whether "sporadic incentive bonus payments made to employees for the performance of work ancillary to their primary duties" were part of the "regular rate of pay" for purposes of determining overtime pay. The DLSE responded that the "answer, under both federal and California law, is, yes." It explained: "The enforcement of the California overtime requirements follow[s] federal precedent where applicable and where the federal precedent is patterned on language which is similar in intent to the California law. . . . [¶] Bonus payments, with certain exceptions [fn. omitted], are included in the calculation of overtime. Bonuses based on incentive must be calculated into the employee's wages to determine the 'regular rate of pay.' " (Dept. of Industrial Relations, DLSE, Chief Counsel H. Thomas Cadell, Jr., Opn. Letter No. 1991-03-06, Calculation of Regular Rate of Pay (Mar. 6, 1991) p. 1; see also *Huntington Memorial*, *supra*, 131 Cal.App.4th at pp. 902—903 [citing opinion letter].) The DLSE similarly opined several years later, advising that "as with federal law," a bonus based on a piece rate "must be figured into

10

***b.*** ***Current law***

***i.*** ***Wage Order 5-2001***

The IWC adopted wage orders in their current forms in 2000.  Consistent with prior versions, Wage Order No. 5-2001, which governs the present case (see *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1018), provides that an employer is obligated to pay an overtime premium for work in excess of eight hours in a day, 40 hours in a week, or for any work at all on a seventh consecutive day.  (Wage Order No. 5-2001, subd. 3, Cal. Code Regs., tit. 8, § 11050, subd. 3(A)(1).)  Such work must be compensated at 1.5 times the employee's "regular rate of pay," or double the "regular rate of pay" if the employee works in excess of 12 hours in a day or in excess of eight hours on a seventh consecutive working day.  (Cal. Code Regs., tit. 8, § 11050, subd. 3(A)(1)(b).)

Wage Order 5-2001 also included, for the first time, a provision requiring premium pay for employees deprived of the ten-minute rest breaks or 30-minute meal breaks required by statute.  Specifically, Wage Order No. 5-2001 provides that an employer who does not allow an employee a rest period or meal period "shall pay the employee one (1) hour of pay at the employee's *regular rate of compensation*" for each workday the rest period or meal period is not provided.  (Cal. Code Regs., tit. 8, § 11050, subds. 11(B), 12(B), italics added.)

Although the IWC thus used slightly different language to describe the premiums due for overtime work and for missed

_____

the formula for determining the 'regular rate of pay.' "  (Dept. of Industrial Relations, DLSE, Chief Counsel H. Thomas Cadell, Jr., Opn. Letter No. 1994-06-17, Regular Rate of Pay (June 17, 1994) p. 2.)

meal and rest breaks ("*regular rate of pay*" versus "*regular rate of compensation*"), nothing in the regulatory history suggests the IWC intended the two phrases to have different meanings. Indeed, the regulatory history suggests exactly the opposite.  In its explanation of the basis for adopting meal and rest break premiums, the IWC said:  "During its review . . . , the IWC heard testimony and received correspondence regarding the lack of employer compliance with the meal and rest period requirements of its wage orders.  The IWC therefore added a provision to this section that requires an employer to pay an employee one additional hour of pay at the employee's *regular rate of pay* for each work day that a meal period is not provided."  (IWC Statement As to the Basis, p. 20, italics added, <https://www.dir.ca.gov/iwc/statementbasis.htm> [as of Oct. 9, 2019], archived at <https://perma.cc/CN6U-HF8P>.)  In other words, the IWC itself appears not to have distinguished between the phrases "regular rate of pay" and "regular rate of compensation"—a telling indicator that it intended these phrases to be applied interchangeably.

### ii. *Sections 510 and 226.7*

At about the same time the IWC enacted wage orders in their current forms, the Legislature added provisions governing overtime premiums and meal and rest break premiums to the Labor Code by adopting sections 510 and 226.7.  *Like the analogous provisions of the wage orders*, section 510 requires overtime pay to be calculated on the basis of an employee's "*regular rate of pay*," and section 226.7 requires meal and rest break premiums to be calculated on the basis of an employee's

12

"*regular rate of compensation.*"[7]  Section 510 does not define "regular rate of pay," and section 226.7 does not define "regular rate of compensation."

Nothing in the legislative history of these enactments suggests that the Legislature intended "regular rate of pay," as used in section 510, and "regular rate of compensation," as used in section 226.7, to have different meanings.  To the contrary, the legislative committee reports describe the proposed meal and rest break premiums—which in every version of the bill were based on an employee's "regular *rate of compensation*"[8]—in terms of

---

[7]  Section 510, subdivision (a) provides:  "Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee.  Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee.  In addition, any work in excess of eight hours on any seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay of an employee."

Section 226.7, subdivision (c) provides:  "If an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law, including, but not limited to, an applicable statute or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided."

[8]  See, e.g., Senate Amendment to Assembly Bill No. 2509 (1999—2000 Reg. Sess.) June 26, 2000, section 12; Senate

13

rates of *pay* or *wages*.  For example, the Senate Committee on Industrial Relations described an early version of the bill as requiring employers to pay an amount "twice the *hourly rate of pay*" (Sen. Com. on Industrial Relations, Analysis of Assem. Bill No. 2509 (1999—2000 Reg. Sess.) as amended June 26, 2000, p. 5, italics added); the Senate Judiciary Committee described the bill as creating employer liability for "twice the employee's *average hourly pay*" (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 2509 (1999—2000 Reg. Sess.) as amended Aug. 7, 2000, p. 8, italics added); and the Senate Rules Committee said failure to provide meal and rest periods would subject an employer to paying a worker an additional "hour *of wages*" (Sen. Com. on Rules, Analysis of Assem. Bill No. 2509 (1999—2000 Reg. Sess.) as amended Aug. 25, 2000, p. 4, italics added).  Similarly, the legislative reports describing the overtime pay provisions of section 510 refer in places to an employee's rate of "*compensation.*"  (E.g., Bill Analysis, Assem. Bill No. 60 (1999—2000 Reg. Sess.) as amended July 1, 1999, p. 3, italics added [under existing law, wage orders require "the payment of time-and-one-half *compensation* for work exceeding eight hours per day, 40 hours per week"]; Sen. Com. on Industrial Relations, Analysis of Assem. Bill No. 60 (1999—2000 Reg. Sess.) as amended May 27, 1999 [same].)

---

Amendment to Assembly Bill No. 2509 (1999—2000 Reg. Sess.) August 7, 2000, section 10; Senate Amendment to Assembly Bill No. 2509 (1999—2000 Reg. Sess.) August 25, 2000, section 7.

### ***iii.    Judicial interpretations of section 510***

Like the DLSE, state courts have drawn on federal authorities interpreting the FLSA to inform their understanding of "regular rate of pay" within the meaning of the wage orders and section 510.  (E.g., *Kao v. Holiday* (2017) 12 Cal.App.5th 947, 960, fn. 5 ["California adheres to federal standards for calculating the regular rate of pay to the extent those standards are consistent with state law"]; *Huntington Memorial, supra,* 131 Cal.App.4th at p. 903 ["federal authorities . . . provide useful guidance in applying" section 510]; *Advanced-Tech Security Services v. Superior Court* (2008) 163 Cal.App.4th 700, 707 [adopting federal definition of "regular rate" for purposes of determining that "regular rate of pay" does not include premium holiday pay:  " 'Our Supreme Court has "frequently referred to such federal precedent in interpreting parallel language in state labor legislation" ' "]; *Alcala v. Western Ag Enterprises* (1986) 182 Cal.App.3d 546, 550, fn. omitted ["California's wage orders are closely modeled after (although they do not duplicate), section 7(a)(1) of the Fair Labor Standards Act of 1938.  (29 U.S.C. § 207 (a)(1).)  It has been held that when California's laws are patterned on federal statutes, federal cases construing those federal statutes may be looked to for persuasive guidance."].)

Last year, our Supreme Court concluded that, like an employee's "regular rate" for purposes of the FLSA, an employee's "regular rate of pay" for purposes of section 510 *is not the same as the employee's straight time rate* (i.e., his or her normal hourly wage rate)."  (*Alvarado, supra,* 4 Cal.5th at p. 554, italics added.)  Instead, the "[r]egular rate of pay, which can change from pay period to pay period, includes adjustments to the straight time rate, reflecting, among other things, shift differentials and the

15

per-hour value of any nonhourly compensation the employee has earned." (*Ibid.*)

### c. *Analysis*

When the Legislature adopted section 226.7 in 2000, it for the first time required employers to pay a premium to employees who were not permitted to take statutory meal and rest breaks. But while the premium pay requirement was new, the statutory language used to describe it was not. Instead, as I have described, in adopting section 226.7 the Legislature used a phrase—"regular rate"—that long had been part of the labor law lexicon, and which had, through many years of judicial interpretation, become a term of art. The Legislature did so, moreover, without indicating an intention to deviate from the well-understood meaning of "regular rate." Under these circumstances, I believe the Legislature's use of "regular rate" indicates its intent that meal and rest break premiums should be calculated on the basis of an employee's base hourly rate *plus bonuses*—i.e., the employee's "regular rate"—*not* the base hourly rate alone.

It is undoubtedly true, as the majority notes, that section 226.7 uses a modifier ("of compensation") that does not appear in federal or state overtime provisions, and further that established rules of statutory construction suggest that courts should attempt to give meaning to every word in a statute to avoid rendering language surplusage. (E.g., *Berkeley Hillside Preservation v. City of Berkeley* (2015) 60 Cal.4th 1086, 1097 [courts should avoid "interpretations that render any language surplusage"].) But although a construction that renders part of a statute surplusage generally should be avoided, " 'this rule is not absolute and "the rule against surplusage will be applied only if it results in a

16

*reasonable* reading of the legislation" [citation].' (*Park Medical Pharmacy v. San Diego Orthopedic Associates Medical Group, Inc.* (2002) 99 Cal.App.4th 247, 254, fn. 5; see *Sturgeon v. County of Los Angeles* (2015) 242 Cal.App.4th 1437, 1448 ['[T]he canon against surplusage is not absolute.'].)" (*MCI Communications Services, Inc. v. California Dept. of Tax & Fee Administration* (2018) 28 Cal.App.5th 635, 650.)

Here, attributing controlling significance to the modifier "of compensation" leads to an entirely *unreasonable* conclusion—namely, that the Legislature used the phrase "regular rate" in section 226.7 without intending the meaning "regular rate" had acquired over the course of more than 60 years.  To paraphrase our Supreme Court, I find it " 'highly unlikely that the Legislature would make such a significant change [in the meaning of "regular rate"] without so much as a passing reference to what it was doing.  The Legislature "does not, one might say, hide elephants in mouseholes." ' " (*Jones v. Lodge at Torrey Pines Partnership*, *supra*, 42 Cal.4th at p. 1171.)

I find the majority's analysis particularly unpersuasive in light of the nearly simultaneous enactment of sections 510 and 226.7.  Reduced to its essentials, the majority's reasoning is as follows.  In 1999, "regular rate" was widely understood to mean base hourly rate *plus bonuses*.  Although the Legislature modified the federal language when it adopted section 510, the Legislature intended "regular rate of pay" to have the same meaning as "regular rate."  But although the Legislature modified the federal language in a similar (although not identical) manner when it adopted section 226.7, it intended an entirely different meaning—and although it nowhere articulated that intended meaning, it expected parties and the courts to infer the meaning

17

by its use of the word "compensation," rather than "pay."  I am not persuaded.

The majority urges that the Legislature's use of "regular rate" in section 226.7 was not a departure from established law because it added a qualifier—"*of compensation*"—that does not appear in the FLSA.  While it is true that "of compensation" is not present in the FLSA, neither is "of pay."  Nonetheless, our Supreme Court has held that, like "regular rate," "regular rate of pay" "includes adjustments to straight time rate, reflecting, among other things, shift differentials and the per-hour value of any nonhourly compensation the employee has earned." (*Alvarado*, *supra*, 4 Cal.5th at p. 554.)  I would reach the same conclusion with regard to "regular rate of compensation."

## 4.    *The Labor Code uses "pay" and "compensation" interchangeably*

Although courts sometimes attach significance to the Legislature's use of different words or phrases in related statutes, where statutes appear to use synonymous words or phrases interchangeably, courts have not hesitated to attribute the same meanings to them.  (See, e.g., *People v. Frahs* (2018) 27 Cal.App.5th 784, 793, fn. 3, review granted Dec. 27, 2018, S252220 [defendant "attempts to draw a distinction between 'deadly weapon' and 'instrument,' but the terms are used interchangeably within the statute"]; *Vector Resources, Inc. v. Baker* (2015) 237 Cal.App.4th 46, 55 ["The italicized words in Labor Code section 1773 show that the terms 'determine' and 'fix' are used interchangeably and have the same meaning in the statute"]; *Alcala v. City of Corcoran* (2007) 147 Cal.App.4th 666, 672 [attributing same meaning to statute's use of "public agency" and "public entity":  "Unless the two terms are read

18

interchangeably, the statute makes no sense"]; *International Assn. of Fire Fighters Union v. City of Pleasanton* (1976) 56 Cal.App.3d 959, 976 ["We perceive no basis for distinguishing between the term 'consultation in good faith,' as used in [Government Code] section 3507, and the 'meet and confer in good faith' process defined in [Government Code] section 3505"]; *Midstate Theatres, Inc. v. County of Stanislaus* (1976) 55 Cal.App.3d 864, 872 ["Applicants argue that the statute uses the words [advise and represent] interchangeably and that in popular usage no valid distinction can be drawn between them.  There is merit in this contention"]; see also *People v. Johnson* (2015) 61 Cal.4th 674, 692 ["Because 'term' and 'sentence' have been used interchangeably, and 'term' clearly has more than one meaning in the statute, we cannot be confident that 'sentence' has a consistent meaning throughout the statute.  In any event, the presumption that a term has an identical meaning throughout a statute 'is rebuttable if there are contrary indications of legislative intent.' "].)

As the Supreme Court has noted, the Legislature "has frequently used the words 'pay' or 'compensation' in the Labor Code as synonyms."  (*Murphy v. Kenneth Cole Productions, Inc.*, *supra*, 40 Cal.4th at pp. 1103—1104 & fn. 6.)  This is not surprising, as "pay" and "compensation" are synonymous as a matter of common parlance.  Webster's dictionary defines "compensation" as "payment, remuneration" (Merriam-Webster's 11th Collegiate Dict. (2008) p. 253, col. 1), and it defines "pay" as "something paid for a purpose and esp. as a salary or wage; remuneration" (*id.*, p. 910, col. 2).  "Pay," "compensate," and "remunerate" are identified as synonyms.  (*Id.* at p. 910, col. 2.)

19

The Legislature's interchangeable use of "pay" and "compensation" is evident throughout the Labor Code generally, as well in those provisions of the Labor Code that describe overtime and meal and rest break premiums specifically. For example, with regard to meal and rest breaks, section 226.7 requires an employer to "*pay*" an employee deprived of a meal or rest break for an additional hour at the employee's "regular *rate of compensation*." (§ 226.7, subd. (c), italics added.) The very next section sets out a limited alternative to this requirement for nonexempt employees holding safety-sensitive positions at a petroleum facility—namely, that if such an employee is required to interrupt his or her rest period to address an emergency, an additional rest period shall be provided or the employer shall pay the employee "one hour of pay at the employee's regular *rate of pay*." (§ 226.75, subd. (b), italics added.) Had the Legislature intended the meal and rest break premium for employees at petroleum facilities to be calculated differently than other meal and rest break premiums, it presumably would have said so explicitly.

Similarly, with regard to overtime, section 510 provides that employees who work more than eight hours per day shall be "*compensated*" at the rate of one and one-half times "the regular *rate of pay*." (§ 510, subd. (a), italics added.) The sections that immediately follow provide that in some circumstances employees may work alternative workweek schedules (four 10-hour days) without being entitled to "payment . . . of an overtime *rate of compensation*," and that the IWC "may establish exemptions from the requirement that an overtime *rate of compensation* be paid" for certain categories of employees. (§§ 511, subd. (a), 515, subd. (a), italics added.) And, section

20

204.3 provides that, as an alternative to overtime pay, an employee may receive compensating time off at a rate either of not less than one and one-half hours for each hour of employment for which overtime compensation is required or, if an hour of employment "would otherwise be compensable at a rate of more than one and one-half times the employee's *regular rate of compensation*, then the employee may receive compensating time off commensurate with the higher rate."  (§ 204.3, subd. (a); see also § 751.8, subds. (a)—(b), italics added [smelters and other underground workers may work more than eight hours in a 24-hour period "if the employee is paid at the overtime *rate of pay* for hours worked in excess of that employee's regularly scheduled shift," but all work performed in any workday in excess of the scheduled hours established by an agreement in excess of 40 hours in a workweek shall be compensated "at one and one-half times the employee's *regular rate of compensation*"].)

In short, the Legislature uses "pay" and "compensation" interchangeably throughout the Labor Code, including in provisions that describe the overtime and meal and rest break premiums.  I would conclude, therefore, that the principle that the same meaning should be attributed to substantially similar language in related statutes (*Moran v. Murtaugh Miller Meyer & Nelson, LLP*, *supra*, 40 Cal.4th at p. 785) supports the conclusion that the Legislature intended "regular rate of compensation" to have the same meaning as "regular rate" and "regular rate of pay."

5.    ***The majority's reliance on a single canon of construction is unpersuasive***

The majority's conclusion that "regular rate of compensation" means an employee's base hourly rate is grounded

21

almost entirely on a single canon of statutory construction—that " '[w]here different words or phrases are used in the same connection in different parts of a statute, it is presumed the Legislature intended a different meaning.' " (Maj. opn. *ante*, at p. 8, citing *Briggs v. Eden Council for Hope & Opportunity* (1991) 19 Cal.4th 1106, 1117.) But while canons of statutory construction are intended to "provide guidance in interpreting a statute," they are " ' " 'merely aids to ascertaining probable legislative intent.' [Citation.] No single canon of statutory construction is an infallible guide to correct interpretation in all circumstances." "[The canons] are tools to assist in interpretation, not the formula that always determines it." ' " (*City of Palo Alto v. Public Employment Relations Bd.* (2016) 5 Cal.App.5th 1271, 1294; see also *Stone v. Superior Court* (1982) 31 Cal.3d 503, 521, fn. 10 [principles of construction "are merely aids to ascertaining probable legislative intent."].) Accordingly, a court must " ' "be careful lest invocation of a canon cause it to lose sight of its objective to ascertain the Legislature's intent." ' " (*People v. Superior Court (Cooper)* (2003) 114 Cal.App.4th 713, 720.)

In the present case, I believe the majority's reliance on a single canon of construction has led it to a conclusion the Legislature did not intend, and that the canon does not support. As a logical matter, if the canon applies, it may suggest what section 226.7 does *not* mean, but it cannot give insight into what the statute *does* mean. In other words, if the canon applies, it might suggest that "regular rate of compensation" does not mean the same thing as "regular rate of pay"—but it does not lead

22

logically to the conclusion that "regular rate of compensation" means straight hourly rate.[9]

## 6.    *Conclusion*

The majority's analysis assumes that when the Legislature adopted sections 226.7 and 510, it intended parties and the courts to understand—in the absence of any clarifying language in the statute or legislative history—that "*regular rate of pay*" has the same meaning as "*regular rate*," but "*regular rate of compensation*" means something different.  I cannot conclude that

---

[9]    Indeed, because elsewhere the Labor Code refers to an hourly wage as "straight time" or "base hourly rate," a consistent application of the interpretive principle on which the majority relies would lead to the conclusion that "regular rate of compensation" cannot mean a straight hourly rate.  (E.g., § 1773.1, italics added [per diem wages:  "Credits for employer payments also shall not reduce the obligation to pay the *hourly straight time* or overtime wages found to be prevailing."]; § 1773.8, italics added ["An increased employer payment contribution that results in a lower taxable wage shall not be considered a violation of the applicable prevailing wage determination so long as all of the following conditions are met:  . . . (b) The increased employer payment and *hourly straight time* and overtime wage combined are no less than the general prevailing rate of per diem wages."]; § 204.11, italics added ["For any employee who is licensed pursuant to the Barbering and Cosmetology Act . . . , wages that are paid to that employee for providing services for which such a license is required, when paid as a percentage or a flat sum portion of the sums paid to the employer by the client recipient of such service, and for selling goods, constitute commissions, provided that the employee is paid, in every pay period in which hours are worked, a *regular base hourly rate* of at least two times the state minimum wage rate."].)

the Legislature "would have silently, or at best obscurely, decided so important . . . a public policy matter and created a significant departure from the existing law." (*In re Christian S.* (1994) 7 Cal.4th 768, 782.) Instead, I would conclude that when the Legislature used the phrase "regular rate" in section 226.7, it intended the phrase to mean what it has always meant: guaranteed hourly wages *plus* "bonuses [that] are a normal and regular part of [an employee's] income." (*Walling v. Harnischfeger Corp., supra,* 325 U.S. at p. 432.)


EDMON, P.J.

24